## CAMP *against* TOMPKINS:

### IN ERROR.

<table><tr><td>9</td><td>545</td></tr><tr><td>72</td><td>261</td></tr></table>

The time within which notice of an intention to file a bill of exceptions to the charge of the court, must be given, not being prescribed by law, but resting in the discretion of the court trying the cause, it will not be deemed, by the court above, a sufficient ground for expunging from the record or disregarding the matters stated in a bill of exceptions allowed, that no such notice was given until after verdict.

*A.*, being indebted to *B.*, made his promissory note for the amount, payable, by mistake, to the order of *C.*, and *B.*, with the assent of *C.*, became the holder of such note. *B.*, being indebted in a larger sum, by note, to *D.*, delivered to him the note of *A.*; which *D.* indorsed on *B.'s* note to him, and gave notice of the assignment to *A.* Afterwards, *C.* obtained payment of *A.'s* note, and gave him a discharge therefrom. In an action brought by *D.* against *C.*, for money had and received, it was held, 1. that the note of *A.*, being negotiable, imported a consideration; 2. that this note having been made by *A.*, and held by him for whose use it was made, with the assent of the nominal payee, and paid by the maker, a delivery was fairly presumable; 3. that if otherwise, still *C.*, who had received the money on the note, could not set up the defence, that *A.* could have avoided it; 4. that this action not being founded on the note, the mistake as to the name of the payee presented no obstacle to a recovery; 5. that *D.*, by virtue of the assignment of the note to him, had the beneficial interest therein, and consequent-

69

*Middlesex,*
*July,* 1833.

Camp
*v.*
Tompkins.

ly, the money paid by *A.* on the note, became *eo instanti* the money of *D.* ; 6. that the right of *D.* was such as a court of law will recognize and protect ; 7. that if it were only an equitable right, it would be sufficient to sustain this action ; 8. that *D.* having such interest in the note, with the assent of *C.*, and such right to the money paid thereon, there was privity of contract between the parties ; 9. that if otherwise, privity of contract is not indispensable to the maintenance of this action.

THIS was an action of *assumpsit,* brought by *Tompkins* against *Henry L. Camp.* The declaration comprised four counts, the three first being special, and the last general, for money had and received to the plaintiff's use. In the former, the plaintiff averred, that in *November* 1829, *Lyman C. Camp,* being indebted to him in a large sum of money, delivered to him a promissory note, signed by *Henry Hoyt,* dated *October* 1st, 1829, for 61 dollars, 62 cents, payable to the order of *Henry L. Camp,* on demand ; which the plaintiff received in part payment of his debt, and gave notice thereof to *Hoyt ;* that *Lyman C. Camp* then was, and ever since has been, insolvent ; that this note, by mistake and inadvertence, was made payable to the defendant, instead of *Lyman C. Camp,* who, at that time, and at the time of transferring the note, was, with the assent of the defendant, the holder thereof, and entitled to the money due thereon ; that the defendant, knowing the premises, but intending to defraud the plaintiff, on the 8th of *February* 1830, obtained payment of said note from *Hoyt,* and gave him a discharge therefrom ; and by means of the premises, the defendant became liable to pay, and in consideration thereof, promised to pay, &c.

On the trial, before the city court of the city of *Middletown,* on the general issue, the plaintiff claimed to have proved the facts alleged in the special counts, but offered no evidence of any express agreement by the defendant, or of any other facts than those stated in the special counts, in support of the general count. The defendant insisted, that these facts, if proved, did not entitle the plaintiff to a verdict ; and prayed the court so to instruct the jury. The court instructed the jury, that if they should find the facts as claimed by the plaintiff, the defendant thereupon became liable, and the law implied a promise on his part, to pay to the plaintiff the sum specified in *Hoyt's* note, with the interest. The jury returned a verdict for the plaintiff, on which judgment was rendered.

The defendant filed a bill of exceptions, stating therein the

evidence and the charge. The plaintiff objected to the allowance of such bill of exceptions, on the ground that no notice thereof was given to the court until after verdict and judgment in the cause. This objection was overruled ; and the bill of exceptions was allowed, and signed, by the presiding judge. On a writ of error, brought by the original defendant, in the superior court, the judgment of the city court was affirmed ; and thereupon the record, by motion in error, was brought before this Court for revision.

*Storrs,* for the plaintiff in error, contended, that from the facts stated in the special counts of the declaration, the law does not imply a promise to pay as for money had and received.

An implied promise must arise from legal indebtedness. But *Hoyt's* note to the defendant was void at law, (as well as in equity,) first, for want of delivery ; and secondly, for want of consideration.

If not void, the mistake could be corrected only in a court of chancery ; it not being competent for the plaintiff, in an action at law, to aver and prove a mistake in a written instrument to contradict or vary its tenor. *Humphrey* v. *Watson,* 1 *Root* 256. *Palmer* v. *Corbin,* 1 *Root* 271. The legal title was, consequently, in the defendant ; and *Lyman C. Camp* had only an equitable interest, and so could transfer only an equitable interest to the plaintiff, whose remedy is in equity only.

No promise of *Hoyt* to the plaintiff is averred ; nor is there any averment of assent by *Hoyt* to the transfer to the plaintiff ; without which *Hoyt* is not legally liable to the plaintiff. *Williams* v. *Everett* & al. 14 *East* 582. *Yates* & al. v. *Bell* & al. 3 *Barn. & Ald.* 643. (5 *Serg. & Lowb.* 409.) *Stewart* v. *Fry,* 7 *Taun.* 339. *Chitt. Contr.* 184, 5.

*Assumpsit* is founded on *privity* in fact or in law ; but there is no contract, express or implied, between the plaintiff and defendant, and no privity between them whatever. *Williams* v. *Everett* & al. 14 *East* 582. It is, then, the case of an assignment by *A.* to *B.* of a claim in equity due by *C.,* to which *C.* does not assent, and which he does not promise to pay. In such a case, the law raises no implied promise.

The action for money had and received lies only where the plaintiff has a *legal* title to the money sought. 2 *Stark. Ev.* 109.

*Middlesex,*
July, 1833.

Camp
*v.*
Tompkins.

The effect of maintaining this action would be, to make choses in action assignable at law to all intents.

*Barnes,* for the defendant in error, contended, 1. That the matters embraced by the bill of exceptions were not parcel of the record ; no notice of a bill of exceptions having been given until after verdict. It must be tendered at the trial ; for if the party then acquiesce, he waives it, and shall not resort back to his exception after a verdict against him, when, perhaps, if he had stood upon his exception, the other party had more evidence, and need not have put the cause on that point. No precise time is prescribed by statute ; but the nature and reason of the thing require, that the exception should be reduced to writing, when taken and disallowed, like a special verdict or demurrer to evidence : not that it need be drawn up in form, but the substance must be reduced to writing while the thing is transacting, because it is to become a record. 2 *Tidd* 788. *Swift's Ev.* 168. 1 *Stark. Ev.* 432. and *Wright* v. *Sharp,* 1 *Salk.* 288, 9. *S. C. Holt* 301. cited *ibid.*

2. That upon the facts found, under the charge of the court, the action for money had and received, is sustainable. If the defendant is under an obligation arising from natural justice, to pay the money, the law implies a promise, and gives this action to enforce it. *Moses* v. *Macferlan,* 2 *Burr.* 1005. *Carter* v. *Canterbury,* 3 *Conn. Rep.* 461. 2 *Stark. Ev.* 107, 8. *Appleton* v. *Crowninshield,* 8 *Mass. Rep.* 359. *Tuttle* v. *Mayo,* 7 *Johns. Rep.* 134.

If *Henry L. Camp* had recovered the money, by suit against *Hoyt,* he would have held it for *Tompkins,* and would have been liable to refund it, in an action for money had and received. The right to the money is the material object of inquiry, and not the form of the instrument, by which the payment of that money is secured. Why otherwise can there be a recovery upon a promissory note, or other negotiable instrument, under the money counts ?

It is said, that there was no *privity* between these parties. But this is not necessary. Among the innumerable cases in which the action for money had and received has been held to be the proper remedy, scarcely one can be found, in which there exists any privity of contract between the parties. *Longchamp* v. *Kenny, Doug.* 137. *Clark* v. *Shee* & al.

*Cowp.* 194. *Stevenson* & al. v. *Mortimer, Cowp.* 805. *Hall* v. *Marston,* 17 *Mass. Rep.* 575. *Arnold* v. *Lyman,* 17 *Mass. Rep.* 400. *Floyd* v. *Day,* 3 *Mass. Rep.* 403. *Bliss* v. *Thompson,* 4 *Mass. Rep.* 488. *Freeman* v. *Otis,* 9 *Mass. Rep.* 272. 1 *Cranch* 441. appx.

All the privity necessary, for the purpose of *Tompkins,* commenced the moment *Henry L. Camp* received the money from *Hoyt.*

WILLIAMS J. The first question to be considered, is, whether we can examine the charge given below. The facts claimed to have been proved, are to be found only in the bill of exceptions;—and it is claimed, that as no notice was given, at the trial, of an intention to file such a bill, it is not to be regarded: in support of which *Wright* v. *Sharp,* 1 *Salk.* 288, is cited. In that case, at the term succeeding the trial, the court was moved for a bill of exceptions, and refused it:—and *Holt,* C. J. said:—" You should have insisted on your exception, at the trial; you waive it, if you acquiesce, and shall not resort back to your exception, after a verdict against you, when, perhaps, if you had stood upon it, the party had other evidence, and need not have put the cause on this point." S. C. *Holt* 301. The reason here given applies rather to an exception to evidence than to the charge of the court; for although the party might add to his evidence, when that which was adduced was excepted to, he could hardly be expected to add to or alter the opinion of the court, by such a notice. The case, at most, only proves, that the judge is not obliged to sign a bill of exceptions, unless presented at the time; (*Pocklington* v. *Hatton,* 8 *Mod.* 221,) but by no means proves, that if he did sign it, the court above could refuse to notice it. It is, certainly, highly proper, that notice be given immediately, when an exception is taken to testimony, that the opposite party may supply it, or waive it; and when taken to the charge, that the attention of the court may be called to it, so that it may be recollected. But the particular time and manner, in which this is to be done, is a matter for every court to regulate, at its own pleasure.—What the rule of the city court is, we are not informed; and we have no more reason to suppose, that the defendant acquiesced in the charge, than that the plaintiff acquiesced in the allowance of the bill of exceptions. However that may have been, it has

*Middlesex,*
July, 1833.

Camp
*v.*
Tompkins.

been allowed, and has become a part of the case ; and I know of no rule of law, which will permit us to say, that it was not properly allowed, especially when it is not shown, that this question was ever made in the court below. And as there is no law expressly fixing the time, it must be as much a matter of discretion as the time of pleading, or the continuance of a cause, or a motion for a new trial.

I proceed, then, to consider the case upon its merits.

Several objections are made, by the plaintiff in error, to the charge of the court.

It is said, that this note was void, and no recovery could have been had upon it, as it does not appear, that any consideration existed, or that there was any delivery of it.

It is to be remarked, that this note is negotiable, though not indorsed ; and such instruments, as well as bills of exchange, from their very nature, import a consideration. In this respect, it is said, bills possess the same privileges as bonds or other specialties ; (*Chitty on Bills* 9. 1 *Tidd* 379.) and notes are now on the same footing. *Emery* v. *Bartlett*, 2 *Ld. Raym.* 1555. And it is said, by counsel, in *Bishop* v. *Young*, 2 *Bos. & Pull.* 79. that in *assumpsit* on bills of exchange, the consideration is never stated.

As to a delivery.—

It seems, that *Hoyt* signed the note, and that *Lyman C. Camp,* with the assent of the defendant, was the holder of it, and entitled to the money due upon it ; all which was known to the defendant ; and that said note and the money due upon it, was the property of *Tompkins ;* and that *Hoyt* has since paid it. Upon these facts, it is insisted, that there was no delivery. That the note was actually made, by *Hoyt,* and is in the hands of him for whose use it was made, with the assent of the nominal payee, and that it has actually been paid, by the maker, are such circumstances as afford a fair presumption of a delivery ; and upon these facts this court cannot say there was no delivery.

Besides, the plaintiff has proved himself to be the owner of the note, and that the promissor has paid it : nor can a third person, who has received, and ought not to retain the money, set up as a defence, that the debtor could have avoided it. *As between these parties,* can we enquire, whether the note was obtained by duress, or was usurious ? Surely, if the

debtor choose to waive any objection of this kind, the defendant cannot be permitted to make it.

Again, it is said, that in a court of law, this mistake in the name cannot be shewn. Mistakes in written instruments are generally to be corrected in chancery; yet it has been held, that where an instrument has been delivered to a person, by a wrong name, this fact may be shown, and averments made in the declaration to meet it. Thus, a suit brought by *E. Willis*, on a note payable by mistake to *E. Willison*, has been sustained. *Willis* v. *Barrett*, 2 *Stark. Ca.* 29. A similar case is stated by *Chitty on Bills*, 187.

It is not, however, necessary to decide that question.—This suit is not brought upon that note. These facts are stated rather as inducement to the plaintiff's title,—but are not to be examined in the same technical manner, as if the suit was founded upon a written instrument. This objection proceeds upon the ground, that the plaintiff has a right to the money, but in consequence of this mistake, must resort to a court of equity to obtain it of *Hoyt*, if he would not pay it. But *Hoyt* has paid it; and then the question is presented, for whose use was it paid?

But if it is admitted, that this plaintiff cannot maintain a suit, in his own name, on the note, it must, I think, also be admitted, that he might maintain a suit in the name of the promisee, for the benefit of the *bona fide* owner, as well as in any other case where the legal interest is not tranferred. *Tompkins*, upon the facts presented in this case, must have all the rights that the assignee of a chose in action not negotiable could have had.

What, then, are these rights? It is well known, that an entire revolution in opinion has taken place upon that subject. The antipathy, which formerly existed against the assignment of a chose in action, has gradually yielded to sentiments more congenial to the demands of commerce and the state of society. The history of this change is given by Judge *Buller*, in his able opinion in the case of *Masters* v. *Miller*, 4 *Term Rep.* 320. 341. He there held, that the courts of law in that country, had, on that subject, adopted all the principles of a court of equity, except that they would not allow a suit in the name of the assignee; and he did not hesitate to say, that he saw no use in preserving the shadow, when the substance was gone. And in pursuance of that opinion, the courts in that country have refused to suffer a defendant, who had

notice of an assignment of a chose in action, to plead a discharge from the assignor obtained after such assignment. *Legh* v. *Legh,* 1 *Bos. & Pull.* 447.

Such also is the law of *New-York.*

And our legislature, in *May* 1822, enacted, that such a discharge, admission, &c. should have no effect other than it would have in a court of equity. *Stat. vol.* 2. *p.* 19.

Our courts also early decided, that after assignment and notice, the debt could not be taken, by foreign attachment, as the property of the debtor ; (*Willis* v. *Pitkin,* 1 *Root* 47. *Redfield* v. *Hillhouse,* 1 *Root* 63. *Fobs* v. *Brewster* & al. 1 *Root* 234. *Tudor* & al. v. *Perkins,* 3 *Day* 364.) and that an action at law will lie against the promissor for taking, or the promissee for giving, a discharge, after assignment and notice, if a loss accrues thereby. *Coleman* v. *Wolcott,* 4 *Day,* 28, 9.

They have also held, that such assignee is so far the real creditor, that if the debtor petition for an act of insolvency, the assignee, and not the assignor, is to be notified as the creditor, as he alone could receive payment. *Colbourn* v. *Rossiter,* 2 *Conn. Rep.* 503. 508. In that case, it is said, by *Smith,* J., that " whenever any collateral injury is done to the debt, such as obliterating, destroying, or converting the note wrongfully to the use of another ; or any injury to process on the note, such as rescous or escape ; the action may, and ought to be, brought in the name of the assignee ;" and *Gould,* J., says, " in such actions, the rights of the assignee are a proper subject of averment, and courts of law recognize and protect them ;" and *Hosmer,* J., says, " the whole beneficial interest is in him, and of this a court of law is authorized to take cognizance." And in *Lyon* v. *Summers,* 7 *Conn. Rep.* 400. 406. *Daggett,* J., says : " This title will be recognized in a court of equity, and also in a court of law, and fully protected. It must be sued in the name of the promissee ; and is liable to all the equity, which subsisted between the original parties."

The rule, then, I understand to be established, in this State, that the assignee of a chose in action not negotiable, has all the rights of the assignor, except that of commencing a suit in his own name. And if so, it would seem to follow, that whenever the action was not upon the obligation itself, it might be brought in the name of him who had the beneficial interest ; and that in this case, when the debt was paid, the

payment must be considered as made for the benefit of him who had the beneficial interest.

It is, however, objected, that there was no privity of contract between this plaintiff and defendant. This must depend upon the right of the plaintiff; for if he has a right to this note, by the assent of this defendant, this objection cannot prevail. There is always a supposed privity of contract between the person whose money it lawfully is and the person who has received it. *Kitchen* & al. v. *Campbell*, 3 *Wils.* 304. 307. And in the case of the *Eagle Bank* v. *Smith*, 5 *Conn. Rep.* 71. 75. it was held, that in this action no privity was necessary. And the court say, this doctrine of privity in the action for money had and received, is in direct opposition even to the common cases in which the action is sustained.

The case of *Williams* v. *Everett* & al. 14 *East*, 582. differs entirely from this, as there was an express dissent.

In connection with this, it was also once insisted upon, that this action was founded upon a *tort*, and was not within that class of cases where the tort could be waived. But the cases of *Lightly* v. *Clouston*, 1 *Taun.* 112. and *Foster* v. *Stewart*, 3 *M. & S.* 191. shew, that this objection is not tenable ; and in *Smith* v. *Jameson*, 5 *Term Rep.* 601. 603. *Buller, J.*, in answer to the objection that a breach of trust may not be the ground of an action of *assumpsit*, says, there is not an abridgement in the law, which does not contradict that proposition.

The great objection, however, is, that the plaintiff has only an equitable, and not a legal interest, and so ought to seek redress in a court of equity. The principle of the case cited above as to the assignment of choses in action, is in direct hostility to this claim.—Whose was this note ? Had it been lost, who could have maintained an action for it ? Had it been discharged, who could have maintained an action for giving or receiving such discharge ? Had the assignor and assignee both absconded, whose effects would this money have been, under our foreign attachment law ? In short, whose was the beneficial interest ? This question must be considered as settled. If so, it seems to me to follow, of course, that the moment the money was paid by *Hoyt*, it became the money of *Tompkins ;* and that he had as good right to it, as if it had been paid to his attorney or a sheriff on an execution. Courts of law now treat a mortgagor as the real owner of the land, as well as courts of equity, although he has

*Middlesex, July, 1833.*

Camp
*v.*
Tompkins.

not a legal title; and why the same principles should not apply to this case I cannot see. In the case of *Teecher* v. *Ives*, 6 *Cowen* 193. it seems to have been treated as an admitted point; and in a recent case in *Great-Britain*, though a definite opinion was not given in the court of *King's Bench*, there is little doubt as to the opinion of the court.

There one *Pratt* took a warrant of attorney from the bankrupt, and assigned it, for a valuable consideration, to the plaintiff, who obtained judgment and execution; and the money was levied, by the sheriff, under an indemnity; the sheriff paid over the money to the defendants' assignees of the bankrupt; and the assignees brought this suit for that money. They objected, that the plaintiff was but an assignee of a chose in action; and the objection was sustained at *Nisi Prius*. When it came to be reviewed in the court of *King's Bench*, *Abbott*, Ch. J. said he should be inclined to adopt what had been urged by the plaintiff's counsel, namely, that when the money was received under the execution, the trust was at an end, and the plaintiff would have acquired such a legal right over the proceeds of the execution as to entitle him, in a court of law, to maintain *assumpsit* for money had and received. If, however, it was necessary to decide the present motion on that ground, he should have examined it further. *Cooper* v. *Wrench* & al. assignees of *Robinson*, 1 *Dowl. & Ryl.* 482. (16 *Serg. & Lowb.* 51.)

The note, then, was the note of the plaintiff; and although he might not have been able to enforce the collection, by a suit in his own name, yet when the money was paid, that technical difficulty does not exist, and the money is to be considered as his own; and a suit may be brought in his own name against the person who detains it.

I am further of opinion, that whether the right to this money is either an equitable or a legal right, the plaintiff may sustain this action. This action for money had and received is in nature of a bill in equity, and the gist of the action is, that the party is obliged, by the ties of equity and natural justice, to refund the money. Such is the doctrine, as laid down, by Lord *Mansfield*, in *Moses* v. *Macferlan*, 2 *Burr.* 1005. 1012., recognized by most of the elementary writers since his day, and by this Court, in *Carter* v. *Canterbury*, 5 *Conn. Rep.* 455. 461. And although Lord *Alvanley*, in the case cited, seems to think the principle too broad, yet as a

general rule, it is abundantly supported. In *Hawkes & ux.* v. *Saunders, Cowp.* 289. 290. the same great judge says, " where a man is under a legal or equitable obligation to pay, the law implies a promise." Again, he says, that the charge and the defence, in this kind of action, are both governed by the equity and conscience of the case. *Longchamp* v. *Kenny, Doug.* 137. In *Fenner* v. *Meares,* 2 *Bla. Rep.* 1269. 1272. Ch. J. *De Grey* says, the plaintiff is entitled in conscience, and therefore, I think, also at law.

And *Buller, J.,* in *Straton* v. *Rastall,* 2 *Term Rep.* 366. 370. speaking of this action, says: " It is extended on the principle of its being considered like a bill in equity; and therefore, in order to recover money in this form of action, the party must show, that he has equity and conscience on his side, and that he can recover in a court of equity."

And in *Foster* v. *Stewart,* 3 *M. & S.* 201. *Le Blanc, J.,* says, these decisions are founded upon the principle, that the money belongs in justice and equity to the plaintiff, yet in order to attain that justice, the law raises a promise to the plaintiff, as if the money was received to his use, which in reality was received by a tortious act.

And in *Wright* v. *Butler,* 6 *Wend.* 290. the Chancellor of *New-York,* says, " that actions of this sort are resorted to as substitutes for bills in chancery, and ought to be encouraged where the law affords no other remedy.

In *Coleman* v. *Wolcott,* 4 *Day* 29. it is said, that where principles have been settled, by the practice, and sanctioned by the experience of courts of chancery, it is highly expedient to incorporate them with the legal code, in cases where the same relief can be furnished. Thus, we find it a well settled principle, that moneys received by a trustee, may, in *England,* be recovered at law, by this action. *Allen* v. *Impett* & al. 8 *Taun.* 263. S. C. 2 *Moore* 240 *Smith* v. *Jameson,* 5 *Term Rep.* 601.

It seems to me, that in this case, there can be no difficulty, even if the plaintiff's interest is considered a mere equitable interest. When this defendant received this money, the fair inference, and the only inference consistent with his integrity, is, that he received it for the use of the plaintiff; and if so, the law will imply an obligation in him to refund it. And I can say, with Ch. J. *Willes,* when the equity of the case is clearly with the plaintiff, I will always endeavour, if I can, and

*Middlesex,*
July, 1833.

Camp
*v.*
Tompkins.

if it be any way consistent with the rules of law, give him relief at law.

I can, therefore, see no error in the charge of the city court, or in the judgment of the superior court.

The other Judges were of the same opinion.

Judgment affirmed·